

NUMBERS 13-06-00105-CR and 13-06-00106-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROBERTO CAPLES,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

On appeal from the County Court at Law No. 2
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Vela
Memorandum Opinion by Justice Rodriguez**

Appellant Roberto Caples appeals his convictions for driving while intoxicated (DWI), *see* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), and duty on striking a fixture or highway landscaping—in this case a railroad crossing gate and switching box—greater than $200. *See* TEX. TRANSP. CODE ANN. § 550.025(b)(2) (Vernon 1999). A jury found

appellant guilty of both charges. For the DWI conviction, appellant received a sentence of 180 days confinement in the Hidalgo County Jail, suspended for one year, a fine of $1000, and 40 hours community service. For the duty on striking a fixture conviction, he received a sentence of 180 days confinement, suspended for 180 days, a fine of $350, 80 hours of community service, and restitution to Rio Valley Switching Company in the amount of $2549.25.

By four issues, appellant contends the evidence is legally and factually insufficient to establish that he was driving the car involved in the accident, the trial court abused its discretion in admitting evidence for impeachment purposes, and the instruction to disregard the impeachment evidence as substantive evidence did not cure any harm. We affirm.

## I. Sufficiency of the Evidence

By his first two issues, appellant challenges the legal and factual sufficiency of the evidence to establish that he was the driver of the car, an element of both offenses for which he was convicted.[1]

### A. Standard of Review

> In assessing the legal sufficiency of the evidence to support a criminal conviction under *Jackson v. Virginia*, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.

*Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.

---

[1]Appellant identified testimony, with record cites, regarding intoxication. He did not, however, provide argument or authority to support a sufficiency challenge as to that element. Therefore, to the extent the sufficiency of the evidence is challenged as to intoxication, we conclude that issue has been inadequately briefed, and we will not address it. *See* TEX. R. APP. P. 38.1(h).

App. 2007)). We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, and we do not substitute our own judgment for the trier of fact. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *See Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). As such, the trier of fact is free to accept or reject all or any portion of the witness's testimony. *See Ozuna v. State*, 133 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.). An appellate court, faced with a record of historical facts that supports conflicting inferences, must also presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326; *see Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

"Evidence is factually insufficient to support the verdict if it is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence." *Rollerson*, 227 S.W.3d at 724 (citing *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)); *see Johnson v. State*, 23 S.W.3d 1, 11-12 (Tex. Crim. App. 2000).

> Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

*Johnson*, 23 S.W.3d at 8.

Both standards require the reviewing court to consider all of the evidence. *Rollerson*, 227 S.W.3d at 724. And, "[a]ll of the evidence is considered by the reviewing court, regardless of whether it was properly admitted." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991). Furthermore, each fact need not point directly and independently to the accused's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13; *see Johnson*, 871 S.W.2d at 186 ("It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.").

### B. Applicable Law

The offense of driving while intoxicated is committed when a person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). The offense of duty on striking fixture or highway landscaping is committed when the operator of a vehicle involved in an accident resulting in $200 or more damage to a fixture legally on or adjacent to a highway fails to take reasonable steps to notify the property owner. TEX. TRANSP. CODE ANN. §550.025(a)(1), (b)(2) (Vernon 1999).

### C. Analysis

#### 1. Legal Sufficiency

4

By his first issue, appellant argues that there is no direct evidence that he was driving at the time of the accident, other than Quintanilla's out-of-court statement[2] that was so unreliable that it was no evidence. We disagree.

In this case, a videotape was made of the arrest and played to the jury. On the arrest videotape, appellant stated that he was driving. The videotape was played for the jury and admitted into evidence. The jury saw and heard the officer ask, "And you were driving?" and appellant answer, "Yep."

Appellant's admission that he was driving the vehicle is also corroborated by the testimony of Ignacio Vega, a security guard who witnessed the accident. Vega described the vehicle as a white Jeep[3] and testified that he did not see who was sitting on the driver's side of the vehicle but that he heard a male voice and a female voice. He testified that, after the accident, he saw a female get out of the passenger side of the Jeep and, while she was out of the vehicle saying there was no damage to the front of the Jeep, he heard a male voice speaking to her from what appeared to him to be the driver's side. The female attempted to open the driver's door but was unable to do so, and the male voice told her to get back inside. She did so, and they left the scene. Based on this testimony, a jury could have determined that a man was the driver and a woman was the passenger, and although there was evidence that the driver's side door was inoperable, the jury could have found it unlikely that the female

---

[2]Lisa Quintanilla made a written statement the day after the accident. In her statement, Quintanilla stated that appellant had been driving.

[3]It is undisputed that appellant owned the Jeep that was involved in the accident.

was driving and climbed over the male passenger to survey the damage to the vehicle and then climbed into the vehicle over him to drive away.

There was also testimony that, as shown in the photographs of the Jeep taken during the search and inventory of the vehicle, the passenger seat was further back than the driver's seat, and that appellant is taller than Lisa Quintanilla, the other person in the vehicle at the time of the accident. Although none of the officers testified that they had moved the car seats, Officer Joe Aguilar with the Mission Police Department testified that it was common practice to move the seats during an inventory to be sure nothing under the seats is overlooked. The jury could have believed it likely that one or both of the seats had been moved during the inventory, or even that Quintanilla, as the passenger, may have just preferred having her seat further back.

Officer Aguilar testified that he located the Jeep parked at a Circle K and that the driver's side of the Jeep from front to rear was "caved in" and the driver's side window was shattered. When he first saw appellant, Officer Aguilar testified that he noticed evidence of the collision—blood, glass, and scratches—on the left side of appellant's head. Officer Aguilar saw no bruises or red marks on Quintanilla's left side. He also testified that Quintanilla said appellant was driving and that appellant admitted to driving; Officer Aguilar was "definitely sure" that appellant was driving the vehicle. Appellant was arrested for DWI and Quintanilla for public intoxication.

Officer Orlando Cedillo, also with the Mission Police Department, after being dispatched to the accident scene, went to the Circle K where Officer Aguilar had found the vehicle parked. Officer Cedillo later viewed the video of the stop and saw

6

appellant say that he was driving. On cross-examination, Officer Cedillo acknowledged that it was possible that appellant said he was driving when in fact he was not.

On the arrest videotape, Quintanilla said that she "usually drives" and that after she got into the vehicle, she felt a sharp pain to her left side.[4] Quintanilla also testified at trial that, among other things, (1) she remembered driving to Pepe's, but did not recall who was driving to and from the accident because she was intoxicated; (2) it was possible she had been driving since she "would always drive"; (3) when she went to the police department the morning after the accident to pick up her things, they gave her the Jeep keys as if she had been driving; and, (4) the pictures show the driver's side seat to be further toward the front than the passenger's side, so she was "possibly driving" because appellant is taller.[5] On two occasions, the jury heard Quintanilla express the possibility that she was driving when the accident occurred—on the arrest videotape and at trial. To the extent her statements are conflicting with other evidence that appellant was driving, the jury could have resolved that conflict in favor of the prosecution, and we must defer to that resolution. *See Jackson*, 443 U.S. at 326; *Turro*, 867 S.W.2d at 47.

---

[4]Appellant argues that because Quintanilla's injuries were to her left side, the physical evidence is consistent with her testimony in court that she was the one who was driving and, thus, undermines confidence in her out-of-court statement that appellant was driving. However, the jury was free to accept or reject all or any portion of her testimony. *See Ozuna v. State*, 133 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.).

[5]Quintanilla also testified at trial that she had made a written statement the day after the accident in which she said appellant had been driving. Appellant objected to this testimony on the basis that the State was calling Quintanilla as an adverse witness for the sole purpose of impeaching her with this statement. We address this testimony, objection, and argument in appellant's third issue.

7

Thus, viewing the evidence in the light most favorable to the verdict, we conclude that, based on the evidence and reasonable inferences therefrom, a rational juror could have found, beyond a reasonable doubt, that appellant was driving the vehicle. *See Jackson*, 443 U.S. at 318-19; *Rosillo*, 953 S.W.2d at 811.

Moreover, reviewing the evidence in a neutral light and deferring to the jury's determination concerning what weight to give contradictory testimonial evidence, *see Johnson*, 23 S.W.3d at 8, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust as appellant urges,[6] *see Watson*, 204 S.W.3d at 414-15, or is against the great weight and preponderance of the evidence. *See Rollerson*, 227 S.W.3d at 724.

Accordingly, we conclude that the evidence was legally and factually sufficient to establish that appellant was driving his Jeep when the accident occurred. We overrule appellant's first and second issues.

## II. Admission of Quintanilla's In-Court Testimony

By his third issue, appellant contends that the trial court abused its discretion in allowing the State to call Quintanilla as a witness when the State intended to impeach Quintanilla's in-court testimony—anticipated to be that she was the driver—with her post-arrest written statement—that appellant was the driver. Appellant asserts that the State's impeachment questioning of Quintanilla was more prejudicial than probative because the State was using the testimony as substantive

---

[6]In his factual sufficiency argument, appellant complains that Quintanilla's out-of-court written statement is unreliable as that of a paid informant and is incompetent because she was "beastly drunk." However, even were we to consider this out-of-court statement in our evidentiary review, we need not address the objections because we consider all evidence, regardless of whether it was properly admitted. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

evidence to establish who was driving the car and not simply as impeachment evidence.

## A. Standard of Review and Applicable Law

We will not disturb a trial court's evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, it must be upheld. *Id.*

Texas Rule of Evidence 607 permits any party, including the party calling the witness, to use a witness's prior inconsistent statement as a means of impeachment. *See* TEX. R. EVID. 607. However, a party may not use impeachment by prior inconsistent statements as a mere subterfuge to get otherwise inadmissible hearsay evidence before the jury. *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); *Pruitt v. State*, 770 S.W.2d 909, 909 (Tex. App.–Fort Worth 1989, pet. ref'd). In such a case, the party profits from the witness's testimony only if the jury misuses the impeachment evidence by considering it for its truth, and thus any probative value the impeachment evidence might have is substantially outweighed by its prejudicial effect. *See* TEX. R. EVID. 403; *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999). A party's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under rule 403. *Hughes*, 4 S.W.3d at 5; *see Barley v. State*, 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995).

## B. Analysis

At the final pretrial hearing and before Quintanilla's trial testimony, appellant objected that, under rule 403, the State would profit from her testimony if the jury used her written statement, not only for impeachment purposes, but also as direct evidence. He argued that the probative value of that statement would be substantially outweighed by its prejudicial effect.[7] TEX. R. EVID. 403. The trial court overruled this objection and allowed the State to call Quintanilla as a witness.[8] Tex. R. Evid. 613(a).

After asking Quintanilla her name, age, and relationship with appellant, the State asked her questions regarding the accident. While viewing the arrest videotape, Quintanilla testified that she remembered getting arrested but that she did not remember anything about the accident, including who was driving, because she was intoxicated. At trial, Quintanilla testified that, for various reasons, it was possible that she had been driving when the accident occurred. Quintanilla also testified that she did not remember making a written statement the day after the accident. In that

---

[7]Appellant also argued pre-trial and now argues on appeal that the trial court abused its discretion because the probative value of the evidence—Quintanilla's written statement providing that appellant was driving—was slight because that statement was given while Quintanilla was in custody and was "beastly drunk" and vomiting. The record, however, does not support this argument. The statement about which appellant complains was taken January 5, 2004, the day following the accident. Quintanilla testified that she went back to make the statement after she was released from jail that morning. Investigator Miguel Luna testified that he took her statement "probably around—between nine and ten o'clock" that morning and that Quintanilla did not seem intoxicated or highly intoxicated while he was taking her statement—"[n]ot at all." There is no testimony that Quintanilla was vomiting at that time. The only evidence regarding her drunken state was during her arrest on January 4, 2004.

Appellant also contends that the probative value of the evidence was slight because the statement was unsworn and uncross-examined. However, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(h). Because these contentions are inadequately briefed, we will not address them.

[8]On appeal the State concedes that it may have believed that Quintanilla intended to say she was the driver. The State notes, however, that such testimony was never given. Rather, Quintanilla testified that she did not remember giving the statement.

10

statement, admitted without objection as State's Exhibit 8, Quintanilla said that appellant was driving.

Quintanilla's challenged statement, however, was not the only evidence that appellant was driving.  Before the State called Quintanilla, the jury had heard appellant state on the arrest videotape that he was driving—the substance of Quintanilla's written statement that is being challenged by appellant.[9]  In addition, we have concluded that evidence presented to the jury, as discussed above in the first two issues, was legally and factually sufficient to establish appellant was driving the Jeep at the time of the accident. And, Quintanilla's written statement was not a direct contradiction of her trial testimony because she did not testify at trial that she was driving, but that she was possibly the driver and could not remember who was driving when the accident occurred.

Considering that the State believed Quintanilla would testify unfavorably, we, nonetheless, find little risk of prejudice under rule 403 to appellant from misuse, if any, by jurors of information learned from the State's impeachment questioning of Quintanilla.  The record reveals other sources of that evidence.  We cannot conclude that the State profited from Quintanilla's testimony; thus, the probative value of Quintanilla's statement, the impeachment evidence, was not substantially outweighed by its prejudicial effect. The trial court did not abuse its discretion in admitting the complained-of testimony.  We overrule appellant's third issue.

---

[9]In addition, on the arrest video, Quintanilla informed the officer that she was possibly driving, a statement that is consistent with her trial testimony.  Thus, the jury had heard this comment before it heard Quintanilla's trial testimony.

Having overruled the third issue, we need not address appellant's fourth issue wherein appellant contends the instruction not to consider impeachment evidence as substantive evidence did not cure any harm beyond a reasonable doubt.[10]  *See* TEX. R. APP. P. 47.1.

### III.  Conclusion

We affirm the judgments of the trial court.

_____

_____
_____ NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 22nd day of May, 2008.

---

[10]Although no record citation is provided by either party and the trial court gave only the same general instruction throughout the trial that the jury, as the sole judge of the witnesses and their testimony, was to give each and every witness the credibility deemed necessary, the parties appear to agree that an instruction was given that preserved the impeachment argument.